Roosevelt N. Nesmith, Esq. (008271997)
**LAW OFFICE OF ROOSEVELT N. NESMITH LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

***Counsel for Plaintiff and the***
***Putative Collective and Classes***
***[additional counsel on signature page]***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAMES CALABRESE, GREGORY CABANILLAS, and   MATTHEW MECHANIC, individually and on behalf of all others similarly situated,

          Plaintiffs,

  -vs-

UBER TECHNOLOGIES, INC. and RAISER, LLC,

      Defendants.

Civil Action No.

**COMPLAINT**

Class and Collective Action

Jury Trial Demanded

### INTRODUCTION

Plaintiffs, James Calabrese ("Calabrese"), Gregory Cabanillas ("Cabanillas") and

Matthew Mechanic ("Mechanic," and collectively with Calabrese and Cabanillas, "Plaintiffs"),

individually and on behalf of all other similarly situated persons, file this Class and Collective

Action Complaint, against Uber Technologies, Inc. and its wholly owned subsidiary, Raiser,

LLC (together "Defendant" or "Uber"), seeking all available relief for unpaid minimum wages

unpaid overtime wages and unreimbursed business expenses pursuant to the Fair Labor

Standards Act 29 U.S.C. § 201, *et seq.* ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A

§. 34:12-56, *et seq*. ("NJWHL"), New Jersey Wage and Hour Regulations N.J.A.C. § 12:56-5.1,

*et seq.*, the New York Labor Law ("NYLL") Article 6, §§ 190 et seq., and Article 19, §§ 650 et

seq., and the supporting New York State Department of Labor Regulations. **.**

## NATURE OF THE ACTION

1.      Plaintiffs allege, on behalf of themselves and all similarly situated, current and

former Uber drivers engaged in interstate commerce, and who elect to opt into this action,

pursuant to the FLSA (hereinafter "Collective Active Members") that they are entitled to *inter*

*alia*: (1) unpaid minimum wages; (2) unpaid overtime wages for hours worked above forty (40)

in a work week, as required by law; (3) unreimbursed business expenses; and (4) and liquidated

damages pursuant to the FLSA.

2.      Plaintiffs Calabrese and Mechanic also bring this action under NJWHL pursuant

to Fed. R. Civ. P. 23, on behalf of themselves and all similarly situated current and former Uber

drivers in the State of New Jersey engaged in interstate commerce that they are entitled to *inter*

*alia,* unpaid minimum wage, social security and unemployment contributions and credits, unpaid

overtime wages for hours worked above forty (40) in a work week, and unreimbursed business

expenses as required by the NJWHL.

3.      Plaintiff Cabanillas brings this action under NYLL pursuant to Fed. R. Civ. P. 23,

on behalf of himself and all similarly situated current and former Uber drivers in the State of

New York engaged in interstate commerce that they are entitled to, *inter alia,* unpaid minimum

wages, social security and unemployment contributions and credits,  and unreimbursed business

expenses as required by the NYLL.

4.      Defendant violated the FSLA, NJWHL and NYLL by misclassifying Plaintiffs

and similarly situated employees as independent contractors and failing to pay these employees

for all the hours worked at minimum wage after work-related expenses, by failing to pay them

overtime wages and failing to reimburse their business related expenses pursuant to Defendant's

company policy for employees.  Plaintiffs and all persons similarly situated, are entitled to

unpaid wages from Defendant for all hours worked by them at minimum wage after payment of work-related expenses, as well as unpaid overtime wages for hours in excess of forty (40) hours worked per work week and unreimbursed business expenses pursuant to company policy.

5.      This Court has jurisdiction over Plaintiffs' FSLA claims pursuant to 29 U.S.C. § 216 b) and 28 U.S.C. § 1331.

6.      This Court has jurisdiction over Plaintiffs' NJWHL and NYLL claims pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453 and 1711-1715, and 28 U.S.C. § 1367.  The parties are diverse and, on information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7.      Plaintiffs are citizens of a State different from that of Defendant.

8.      Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

9.      Plaintiffs Calabrese and Mechanic reside in this district.

10.     Defendant regularly conducts business in this district.

## THE PARTIES

11.     Plaintiff, JAMES CALABRESE, is an individual residing in Cranford, New Jersey.  Mr. Calabrese has worked as a driver engaged in interstate commerce for Uber from 2017 to the present.  While working for Uber, Mr. Calabrese has engaged in interstate commerce by driving passengers from New Jersey to New York City and from New Jersey to New York airports and picking up and dropping off passengers from Newark International Airport and New Jersey Train Stations.  In 2018, Mr. Calabrese completed 370 trips and drove 3,322 miles for Uber.  His gross earnings were $5,602.90, and his expenses, fees and taxes were $1,892.33, for items including the Uber Service Fee, Booking Fee, Split Fare Fee, Airport and/or City Fee, and instant Pay Charges, for a net pay out of $3,710.57.  Mr. Calabrese was reimbursed $268.12 for out of pocket expenses for tolls, airport fees and surcharges.  Mr. Calabrese was not

reimbursed for additional out-of-pocket expenses necessarily incurred on the job and required by Uber, including return trip tolls, vehicle maintenance, gas, and insurance which totaled more than $1,810.49.  As a result of Uber's failure to reimburse Mr. Calabrese for all work-related expenses, Mr. Calabrese did not receive minimum wage for all hours worked.  Mr. Calabrese also did not receive overtime pay for all hours worked in excess of forty hours per week as required by State and Federal Laws. By way of example, during the week of June 19, 2018 through June 25, 2018, Mr. Calabrese worked 55 hour and 57 minutes.  Mr. Calabrese did not receive overtime pay for the hours he worked in excess of 40 hours.

12.     Plaintiff MATTHEW MECHANIC, is an individual residing in West Orange, New Jersey.  Mr. Mechanic has worked as an Uber driver engaged in interstate commerce from 2015 to the present.  Mr. Mechanic did not receive minimum wage for all hours worked after deductions for work-related expenses including car maintenance and lease payments, gas, insurance and tolls.  In 2018, Mr. Mechanic drove 398 trips and had logged 4,220 miles online with Uber, including trips from New Jersey to New York City, Connecticut and New York airports.  Mr. Mechanic's gross trip earnings for 2018 were $5,886.72 and his additional earnings were $246.20.  However, his net earnings were $4,182.01 and he was only reimbursed $260.30 for tolls, airport fees and surcharges.  Mr. Mechanic was not reimbursed for other out-of-pocket expenses necessarily incurred on the job and required by Uber, including vehicle maintenance and lease payments, gas, and insurance.  Uber was required to reimburse Mr. Mechanic's business-related expenses under the terms of Uber's employee expense reimbursement policy, in violation of New Jersey law.  In addition, Uber's failure to reimburse Mr. Mechanic for his business-related expenses under the terms of Uber's employee expense reimbursement policy violated New Jersey law. As a result of Uber's failure to reimburse Mr. Mechanic for his work-related expenses, Mr. Mechanic was not paid minimum wage for all hours worked.

13.     Plaintiff GREGORY CABANILLAS, is an individual residing in Elmsford, New York.  Mr. Cabanillas has worked as an Uber driver engaged in interstate commerce from 2017 to the present.   While working for Uber, Mr. Cabanillas has engaged in interstate commerce by driving passengers from New York to New Jersey, Connecticut and Massachusetts, and to New York and New Jersey airports, transporting passengers to and from Westchester County Airport, LaGuardia Airport, John F. Kennedy International Airport and Newark Liberty International Airport.  In 2018, Mr. Cabanillas completed 451 trips and drove 8,982 miles for Uber.  His gross earnings were $6,256.18.  He was reimbursed $284.62 for tolls and received $314.20 in tips.  Mr. Cabanillas was not reimbursed for additional out-of-pocket expenses necessarily incurred on the job and required by Uber, including return trip tolls, vehicle maintenance, gas, and insurance.  As a result of Uber's failure to reimburse Mr. Cabanillas for all work-related expenses, Mr. Cabanillas did not receive minimum wage for all hours worked.

14.     Defendant Uber Technologies, Inc. ("Uber") is a transportation services company that provides drivers who can be hailed and dispatched through a mobile phone application.  Uber is headquartered in San Francisco, California.

15.     Defendant Raiser, LLC is a wholly owned subsidiary of Uber and handles and processes all payments to Uber drivers ("Raiser," and collectively with Uber, "Defendant").  Raiser is headquartered in San Francisco, California.

**FACTUAL ALLEGATIONS**

16.     Pursuant to Defendant's policy, pattern and/or practice, Defendant failed to pay Plaintiffs and all similarly situated employees proper minimum wage, and failed to reimburse their business-related expenses per the terms of company policy.  Defendant also failed to pay Plaintiff Calabrese and similarly situated employees overtime wages when they worked in excess of 40 hours in a workweek.

17.     The FLSA, NJWHL and NYLL require employers to provide their employees with sufficient reimbursements for employment related expenses ("kickbacks") to ensure that

employees' hourly wages equal or exceed the required minimum wage after such expenses are counted against the hourly wages.  Defendant systematically under-reimbursed its drivers for vehicular wear and tear, gas, tolls, airport fees, and other driving-related expenses, thereby ensuring that the majority of Defendant's drivers are effectively paid well below the minimum wage.

18.     At all times relevant hereto, Defendant has been an employer within the meaning of Section 3(d) of the FLSA.

19.     At all times relevant herein, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA and an enterprise engaged in commerce, including interstate commerce, within the meaning of Section 3(s)(1) of the FLSA because it has employees engaged in commerce, including interstate commerce.

20.     Defendant has had a gross volume of sales made or business done of at least $500,000 per annum.

21.     At all times relevant herein, Plaintiffs and others similarly situated were engaged in interstate commerce as Uber drivers.  Indeed, Uber drivers in the tri-state area of New Jersey, New York and Connecticut regularly engage in interstate commerce which is defined as trade, traffic, or transportation in the United States— (1) between a place in a State and a place outside of such State (including a place outside of the United States); (2) between two places in a State through another State or a place outside of the United States; or (3) between two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States, including, but not limited to, instate airports, train stations and bus depots.

22.     Because Plaintiffs and other similarly situated Uber drivers are or were engaged in interstate commerce on behalf of Uber, the arbitration clause in the Uber Technology Services Agreement is unenforceable.  *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019).

23.     Defendant issued paychecks to Plaintiffs and all similarly situated employees during their employment.

24.     Defendant directed the work of Plaintiffs and similarly situated employees and benefitted from work performed that Defendant suffered or permitted from them.

25.     Plaintiffs and others similarly situated were not paid minimum wage for all hours worked, and Plaintiff Calabrese and others similarly situated worked in excess of 40 hours per work week without receiving overtime compensation, as required by the FSLA, NJWHL and other applicable local, state and federal wage and hour laws.

### Uber Has Misclassified Its Drivers as Independent Contractors

26.     Defendant has tried to shield itself from liability for its blatant minimum wage violations by misclassifying its drivers as independent contractors.  Uber drivers, however, are employees.  They are required to follow a litany of detailed requirements imposed on them by Uber and they are graded, and subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, their ability to reject rides, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.).  Uber thus supervises the performance of drivers' work according to criteria set by Uber.

27.     Uber controls the hours and locations worked by the drivers via the Uber Driver App.  Uber will automatically log out the driver from the Driver App after 12 hours of work, thus making it impossible to work thereafter for at least eight hours.  Uber also has the ability to deactivate its Driver App at any time, thus making it impossible for the driver to work while it is deactivated.  For instance, when a New Jersey Uber driver enters New York, Defendant shuts off the Driver App, thus making it impossible for the New Jersey Uber driver to obtain a return fare back to New Jersey.

28.     Uber states in its Technology Services Agreement that it "retains the right to deactivate or otherwise restrict you [driver] from accessing or using the Driver App or the Uber Services in the event of a violation or alleged violation of this Agreement, your disparagement of Company or any of its Affiliates, your act or omission that causes harm to Company's or its Affiliates' brands, reputation or business as determined by Company in its sole discretion."  Uber also states in the Technology Services Agreement that, "[i]n order to continue to receive access to the Driver App and the Uber Services, you [driver] must maintain an average rating by Users that exceeds the minimum average acceptable rating established by Company for your Territory, as may be updated from time to time by Company in its sole discretion ("Minimum Average Rating")."  Uber further "reserves the right, at any time in Company's sole discretion, to deactivate or otherwise restrict you [driver] from accessing or using the Driver App or the Uber Services if you [driver] fail to meet the requirements set forth in the [Technology Services] Agreement."

29.     Uber requires its drivers to use electronic mobile devices, such as cell phones, to access the Driver App.  Uber encourages its drivers to use their own mobile devices in order to provide transportation services and does not reimburse drivers for the cost and maintenance of the driver's mobile device and the necessary wireless data plan.  If a driver elects to use a Company Device, the driver is required to reimburse Uber for the costs associated with the wireless data plan of each Company Device and/or a deposit for each Company device.

30.     Uber controls the method of pay for the drivers and sets the fare for each ride. Uber prohibits drivers from setting rates of pay for their services; rather, their rates are determined by Uber.  Uber "reserves the right to change the Fare Calculation at any time in the Company's discretion based upon local market factors."  Uber, moreover, reserves the right to adjust the fare for a particular instance of transportation services if the driver takes an inefficient route, *i.e.*, a route different than the one provided by Uber on the Driver App.

31.     Uber controls the work and directs the manner in which the drivers perform their work.  Via the Uber Driver App, Uber provides its drivers with the only instrumentality by which a driver can perform services for Uber.   Uber issues each of its drivers a Driver ID.  The Driver ID enables the driver to access and use the Driver App on a hand held electronic device or cell phone.  In its Technology Services Agreement, Uber informs drivers that it "reserves the right to deactivate your Driver ID if you have not fulfilled a request for Transportation Services using the Driver App at least once a month."  Through the Driver App, Uber sets the passenger pick up location.  Uber only provides the driver with the location of the passenger for pick up, and does not disclose the destination of the passenger, until the pickup has been made.  If the Uber driver declines the ride once the destination is provided, the driver is demoted and given a negative rating.

32.     Uber tracks each driver's location on the Driver App and recommends that the driver follow the route provided on the Driver App.  If the driver does not follow the route provided by Uber on the Driver App, the driver's fare will be reduced if the alternate route takes longer.

33.     Uber thus maintains control, oversight, and discretion over its operations, including the work of Plaintiffs and similarly situated drivers.

34.     Uber may terminate drivers at any time and may "deactivate [the] Driver ID immediately, without notice," if drivers "no longer qualify, under applicable law or the standards and policies of Company and its Affiliates, to provide Transportation Services or to operate the Vehicle" or as otherwise set forth in the Technology Services Agreement.

35.     Uber is in the business of providing transportation servicers to passengers, and that is the service that Plaintiffs and the other Uber drivers provide.  The drivers' servicers are fully integrated into Uber's business, and without the drivers, Uber would not exist.

36.     Plaintiffs, the Collective Action Members, and the New Jersey Class Members and the New York Class Members, performed their work in the normal course of Uber's business and their work was integrated into Uber's business.

37.     Defendant's improper and illegal, company-wide policy, pattern and/or practice of mischaracterizing Defendant's labor force as "independent contractors" improperly reduced Defendant's labor cost, thereby fraudulently increasing the appearance of Defendant's profitability.

38.     Defendant's company-wide policy, patterns and/or practice of misclassifying its employees as independent contractors was knowing and intentional.

39.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant misclassified Plaintiffs and other similarly situated current and former employees, as independent contractors exempt from coverage of the minimum wage and overtime provisions of the FLSA, the NJWHL, and other local and state wage and hour laws.

**Uber Fails to Reimburse Its Drivers For
Work-Related Expenses Required by Uber**

40.     Throughout the relevant time period, Uber has required its driver to maintain and provide a safe, clean, functioning, insured and legally-operable automobile to make deliveries. Uber has also required its drivers to bear the "out-of-pocket" costs associated with their vehicles, including vehicle maintenance and repairs, insurance, and gas.

41.     The Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.  In 2016, the IRS rate was $0.54 per mile.  In 2017, the IRS rate was $0.53.5 per mile.  In 2018, the IRS rate was $0.54.5 per mile.  As of January 1, 2019, the IRS rate is $0.58 per mile.

42.     Thus, during the relevant period, the actual "out-of-pocket" costs that Uber's drivers paid to provide a safe, functioning, insured and legally-operable automobile was a minimum of $0.53.5 per mile and a maximum of $0.58 per mile.

43.     Plaintiffs and other Uber drivers were paid per ride at rates above the hourly minimum wage.  However, the rate per ride was not sufficient to offset Plaintiffs' and other Uber drivers' actual "out-of-pocket" costs incurred and thus netted out to be less than minimum wage for all hours on the job.

44.     By way of illustration, during the week of September 4, 2018 through September 10, 2018, Mr. Calabrese worked 5 hours and 9 minutes (5.15 hours) and earned $74.20.  He drove 65.22 miles.  Using the IRS standard mileage rate of 54.5 cents, it cost Mr. Calabrese (65.22 x .545 cents) $35.54 in car expenses, leaving a net pay of $38.66 ($74.20 - $35.54) or $7.50 per hour ($35.54 / 5.15 hours).  $7.50 is below New Jersey 2018 minimum wage of $8.60 per hour.

45.     During the week of December 4, 2017 to December 10, 2017,  Mr. Calabrese worked 3 hours and 12 minutes (3.2 hours) and earned $43.47.  He had to travel 41.72 miles. Using the IRS Standard mileage rate of 54.5 cents or .545 dollars, Mr. Calabrese's car expenses were $22.74 (41.72 x .545).  Using Mr. Calabrese's Gross Earnings of $43.47, his net earnings for the week would be $20.73. (gross earnings – car expenses) or ($43.47 – 22.74), resulting in an hourly wage of $6.48.

45.     As a result, Uber has underpaid Plaintiffs and its other drivers and fails to pay minimum wage for all hours worked after deduction of the work-related expenses.

46.      Plaintiffs, the Collective Action Members, the New Jersey Class Members and the New York Class Members also worked in excess of 40 hours per work week without being paid overtime wages in violation of the FLSA, the NJWHL, the NYLL and other local and state wage and hour laws.

47.     The number of hours Plaintiffs and other members of the Class worked per week can be ascertained from Defendant's records, including the trip logs maintained on the Uber app.

48.     Defendant, via the Uber Driver App, assigned all of the work that Plaintiffs, the Collective Action Members and New Jersey Class Members have performed, and Defendant is aware of all of the work that they have performed.

## FLSA COLLECTIVE ACTION ALLEGATIONS

49.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiffs seek to prosecute their FLSA claim as a Collective Action on behalf of all individuals who during the relevant time period are or were Uber drivers in the United States classified as "independent contractors" and (a) who drove across state lines to pick up or transport passengers to and from their destinations, including, but not limited to airports, train stations and bus stations servicing interstate and/or international destinations, or (b) who drove within one state to pick up or transport passengers to and from airports, train stations and bus stations that service interstate and/or international destinations.

50.     Defendant is liable under the FLSA for, *inter alia*, failing to pay proper minimum wage and overtime wages and failing to reimburse business expenses to Plaintiffs and other similarly situated employees.

51.     There are many similarly situated current and former Uber drivers engaged in interstate commerce who have not been paid proper minimum wages, overtime wages and reimbursed their business expenses in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the Collective pursuant to 29 U.S.C. § 216(b).

52.     The similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

**NEW JERSEY CLASS ALLEGATIONS**

53.     Plaintiffs James Calabrese and Matthew Mechanic sue on their own behalf and on behalf of the New Jersey Class, pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), defined as all current and former Uber drivers in the state of New Jersey who during the relevant time period are or were classified as "independent contractors" and (a) who drove across state lines to pick up or transport passengers to and from their destinations, including, but not limited to airports, train stations and bus stations servicing interstate and/or international destinations, or (b) who drove within one state to pick up or transport passengers to and from airports, train stations and bus stations that service interstate and/or international destinations.

54.     Defendant violated the NJWHL and the regulations promulgated thereunder by failing to pay proper minimum wages to Plaintiffs Calabrese and Mechanic and other putative New Jersey Class Members, and required overtime wages to Plaintiff Calabrese and other putative New Jersey Class Members.

55.     The New Jersey Class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, these similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

56.     Upon information and belief, there are more than 1000 members of the New Jersey Class.  Indeed, there are at least 16,000 Uber drivers in New Jersey.  *See* https://nj.gov/oag/newsreleases18/pr20180926a.html.

57.     There are questions of law and fact common to the members of the New Jersey Class that predominate over any questions solely affecting the individual members of the New Jersey Class.

58.     The critical question of law and fact common to Plaintiffs Calabrese and Mechanic and the New Jersey Class that will materially advance the litigation is whether

Defendant is required by the NJWHL to pay Plaintiffs Calabrese and Mechanic and the New

Jersey Class minimum wage and overtime wages at a rate of 1.5 times their regular hourly rate

for hours worked in excess of forty (40) hours per week.

59.     Other questions of law and fact common to the New Jersey Class that will

materially advance the litigation include, without limitation:

      a.     Whether Defendant employed Plaintiffs Calabrese and Mechanic and the
New Jersey Class Members within the meaning of NJWHL;

      b.     The nature and extent of the class-wide injury and the appropriate measure of
damages for the Class;

      c.     Whether Defendant failed to pay Plaintiffs Calabrese and Mechanic and the
New Jersey Class the legally required minimum wage in violation of the
NJWHL;

      d.     Whether Defendant failed to pay Plaintiff Calabrese and the New Jersey
Class overtime compensation for hours worked in excess of 40 hours per
workweek, in violation of the NJWHL;

      e.     Whether Defendants failed to reimburse Plaintiff Calabrese and Mechanic
and the New Jersey Class for their business-related expenses and promised
under the Company policy.

      f.     Whether Defendant is liable for all damage claimed by Plaintiffs Calabrese
and Mechanic and the New Jersey Class, including, without limitation,
compensatory and statutory damages, interest, costs and disbursements, and
attorneys' fees.

60.     Plaintiffs Calabrese and Mechanic's claims are typical of the claims of the

members of the New Jersey Class.

61.     Plaintiffs Calabrese and Mechanic have the same interests in this matter as all

other members of the New Jersey Class.

62.     Plaintiffs Calabrese and Mechanic are adequate class representatives, are

committed to pursuing this action and have retained competent counsel experienced in wage and

hour law and class action litigation.

63.     Class certification of Plaintiffs Calabrese and Mechanic's NJWHL claim is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the New Jersey Class, making appropriate both declaratory and injunctive relief with respect to the New Jersey Class as a whole.  The members of the New Jersey Class are entitled to injunctive relief to end Uber's common and uniform policy, pattern and/or practice of denying New Jersey Class Members the wages to which they are entitled.

64.     Class certification of Plaintiffs Calabrese and Mechanic's NJWHL claim is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New Jersey Class predominate over questions affecting only individual members of the New Jersey Class, and because a class action is superior to other available methods for the fair and efficient adjudication of the litigation.

65.     Plaintiffs Calabrese and Mechanic know of no difficulty that would be encountered in the management of this ligation that would preclude its maintenance as a class action.

## NEW YORK CLASS ALLEGATIONS

53.     Plaintiff Greg Cabanillas sues on his own behalf and on behalf of the New York Class, pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), defined as all current and former Uber drivers in the state of New York who during the relevant time period are or were classified as "independent contractors" and (a) who drove across state lines to pick up or transport passengers to and from their destinations, including, but not limited to airports, train stations and bus stations servicing interstate and/or international destinations, or (b) who drove within one state to pick up or transport passengers to and from airports, train stations and bus stations that service interstate and/or international destinations.

54.     Defendant violated the NYLL and the regulations promulgated thereunder by failing to pay proper minimum wage to Plaintiff Cabanillas and other putative New York Class Members.

55.     The New York Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, these similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

56.     Upon information and belief, there are more than 1000 members of the New York Class.  Indeed, there are at least 25,000 Uber drivers in New York City as of 2015, and the number of daily app-based rides nearly quadrupled to 160 million trips between 2015 and 2017. . *See* https://static1.squarespace.com/static/53ee4f0be4b015b9c3690d84/t/5b3a3aaa0e2e72ca7407914 2/1530542764109/Parrott-Reich+NYC+App+Drivers+TLC+Jul+2018jul1.pdf

57.     There are questions of law and fact common to the members of the New York Class that predominate over any questions solely affecting the individual members of the New York Class.

58.     The critical question of law and fact common to Plaintiff Cabanillas and the New York Class that will materially advance the litigation is whether Defendant is required by the NYLL to pay Plaintiff Cabanillas and the New York Class minimum wage and overtime wages at a rate of 1.5 times their regular hourly rate for hours worked in excess of forty (40) hours per week.

59.     Other questions of law and fact common to the New York Class that will materially advance the litigation include, without limitation:

    a.     Whether Defendant employed Plaintiff Cabanillas and the New York Class Members within the meaning of NYLL;

    b.     The nature and extent of the class-wide injury and the appropriate measure of damages for the Class;

c.      Whether Defendant failed to pay Plaintiff Cabanillas and the New York Class the legally required minimum wage for hours worked in excess of 40 hours per workweek, in violation of the NYLL;

e.      Whether Defendant is liable for all damage claimed by Plaintiff Cabanillas and the New York Class, including, without limitation, compensatory and statutory damages, interest, costs and disbursements, and attorneys' fees.

60.     Plaintiff Cabanillas' claims are typical of the claims of the members of the New York Class.

61.     Plaintiff Cabanillas has the same interests in this matter as all other members of the New York Class.

62.     Plaintiff Cabanillas is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in wage and hour law and class action litigation.

63.     Class certification of Plaintiff Cabanillas' NYLL claim is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the New York Class, making appropriate both declaratory and injunctive relief with respect to the New York Class as a whole.  The members of the New York Class are entitled to injunctive relief to end Uber's common and uniform policy, pattern and/or practice of denying New York Class Members the wages to which they are entitled.

64.     Class certification of Plaintiff's NYLL claim is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over questions affecting only individual members of the New York Class, and because a class action is superior to other available methods for the fair and efficient adjudication of the litigation.

65.     Plaintiff Cabanillas knows of no difficulty that would be encountered in the management of this ligation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### FAIR LABOR STANDARDS ACT: UNPAID MINIMUM WAGE, UNPAID OVERTIME WAGES AND UNREIMBURSED BUSINESS EXPENSES
(Brought on Behalf of Plaintiffs and All Collective Action Members)

66.     Plaintiffs, on behalf of themselves and all Collective Action Members, repeats, reiterates and realleges each and every allegation of Paragraphs 1 through 65 as if they were set forth herein at length.

67.     At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 § U.S.C. 206(a) and 207(a).

68.     Defendant formerly employed Plaintiffs, and employed and/or continues to employ, each of the Collective Action Members, within the meaning of FLSA.

69.     Defendant has and continues to engage in a policy, pattern and/or practice of violating the FLSA, as detailed in this Complaint.

70.     Plaintiffs have consented in writing to be party to this action, pursuant to 29 U.S.C. § 216(b).

71.     The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq.*, apply to Defendant.

72.     At all relevant times and continuing to the present time, Defendant had a policy pattern and/or practice of failing to pay minimum wage and overtime compensation to its employee drivers misclassified as independent contractors.

73.     As a result of Defendant's willful failure to compensate its employees, including Plaintiffs and the Collective Action Members, at minimum wage, and its willful failure to compensate Plaintiff Calabrese and the Collective Members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek,

Defendant has violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. § § 207(a)(1) and 215(a).

74.     As a result of Defendant's FSLA violations, Plaintiffs, on behalf of themselves and the Collective Action Members, are entitled (a) to recover from Defendant their unpaid wages for all of the hours worked by them at minimum wage and at one and a half times the regular rate of pay as overtime compensation for all hours worked in excess of 40 hours per week, (b) to recover an additional, equal amount as liquidated damages, and (c) to recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

75.     Because Defendant's violation of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## SECOND CAUSE OF ACTION

### NEW JERSEY WAGE AND HOUR LAW: UNPAID MINIMUM WAGES, UNPAID OVERTIME WAGES; AND UNREIMBURSED BUSINESS EXPENSES
#### (Brought on Behalf of Plaintiffs Calabrese and Mechanic and All New Jersey Class Members)

76.     Plaintiffs repeat, reiterate and reallege each and every allegation of Paragraphs 1 through 65, as if they were set forth herein.

77.     At all relevant times, Plaintiffs and the New Jersey Class Members were employed by Defendant within the meaning of the NJWHL, and Defendant was an employer within the meaning of NJWHL.

78.     The overtime wage provision of the NJWHL and its supporting regulations apply to Defendant.

79.     Defendant willfully violated Plaintiffs' rights and the rights of the New Jersey Class Members by failing to pay them the legally required amount of minimum wage and overtime compensation at rates not less than one and one-half times their regular rate of pay for

all hours worked by them in excess of 40 hours in a workweek, in violation of the NJWHL and its regulations.

80.    Defendant knew and/or showed reckless disregard that its conduct was prohibited by the NJWHL.

81.    As a result of Defendant's willful violations of the NJWHL, Plaintiffs and the New Jersey Class Members are entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees and costs of the action and pre-judgment and post-judgment interest, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, pursuant to N.J.S.A. §34:11-56a25.

## THIRD CAUSE OF ACTION

**NEW YORK LABOR LAW: UNPAID MINIMUM WAGES, UNPAID OVERTIME WAGES; AND UNREIMBURSED BUSINESS EXPENSES**
**(Brought on Behalf of Plaintiff Cabanillas and All New York Class Members)**

76.    Plaintiff Cabanillas repeats, reiterates and realleges each and every allegation of Paragraphs 1 through 65, as if they were set forth herein.

77.    At all relevant times, Plaintiff Cabanillas and the New York Class Members were employed by Defendant within the meaning of the NYLL, and Defendant was an employer within the meaning of NYLL.

78.    The minimum wage provision of the NYLL and its supporting regulations apply to Defendant.

79.    Defendant willfully violated Plaintiff Cabanillas' rights and the rights of the New York Class Members by failing to pay them the legally required amount of minimum wage compensation at rates not less than one and one-half times their regular rate of pay for all hours worked by them in excess of 40 hours in a workweek, in violation of the NYLL and its regulations.

80.     Defendant knew and/or showed reckless disregard that its conduct was prohibited by the NYLL.

81.     As a result of Defendant's willful violations of the NYLL, Plaintiff Cabanillas and the New York  Class Members are entitled to recover from Defendant their unpaid wages and unreimbursed business expenses, reasonable attorneys' fees and costs of the action and pre-judgment and post-judgment interest, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, pursuant to NYLL Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations..

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, the Collective Action Members, the New Jersey Class Members, and the New York Class Members are entitled to and pray for the following relief:

a)      Designation of this action as an FLSA collective action on behalf of Plaintiffs and the Collective Action Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective Action Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b)      Certification of the New Jersey Class as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and the appointment of Plaintiffs and their counsel to represent the members of the New Jersey Class;

c)      Certification of the New York Class as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and the appointment of Plaintiffs and their counsel to represent the members of the New York Class;

c)      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NJWHL and NYLL.

d)      An injunction requiring Defendant to cease its unlawful practices under the NJWHL and the NYLL and to comply with the law;

e)      An award of unpaid wages at minimum wage after payment of work-related out-of-pocket expenses, and for all hours worked in excess of 40 in a workweek at a

rate of one and one-half the regular rate of pay under the FLSA, the NJWHL and the NYLL.

f)  An award of liquated damages pursuant to 20 U.S.C. § 216;

g)  An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

h)  An award of prejudgment and post-judgment interest;

i)  An award of costs and expenses of this action together with reasonable attorneys' fees; and

j)  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify under penalty of perjury under the laws of the United States of America that to the best of my knowledge, this matter is not the subject to any other action pending in any court, or of any pending arbitration or administrative proceeding.  I understand that if the foregoing statement is willfully false, I am subject to punishment.

Dated:  September 25, 2019

**LAW OFFICE OF**
**ROOSEVELT N. NESMITH LLC**

By: Roosevelt N. N. Nesmith
      Roosevelt N. Nesmith

363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

Russell S. Warren, Jr.
**LAW OFFICES**
**OF RUSSELL S. WARREN, JR.**
473 Sylvan Avenue
Englewood Cliffs, NJ  07632
Tel. (201) 503-0773

Fax: (201) 503-0776
*mail@rwarrenlaw.com*

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF & ANDERSON LLP**
90 Broad  Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 964-9620
*canderson@gslawny.com*

**THE MARKHAM LAW FIRM**
David R. Markham, Esq.
*dmarkham@markham-law.com*
750 B Street, Suite 1950
San Diego, California 92101
Tel: (619) 399-3995
Fax: (619) 615-2067

*Attorneys for Plaintiffs and the*
*Putative Collective and Class*